IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


DEAN KLETO, et al.,                )
      Plaintiffs,              )
                                   )
v.                                 )     No. 3:04-CV-243
                                   )     (Phillips)
AMSOUTH BANK,                      )
      Defendant.               )


### MEMORANDUM OPINION

Plaintiffs Dean Kleto and wife, Marcia Kleto have sued defendant AmSouth Bank alleging (1) breach of contract, (2) fraud; (3) negligent misrepresentation; and (4) violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, arising from AmSouth's failure to finance plaintiffs' purchase of a condominium on Hilton Head Island in South Carolina. Defendant has moved for summary judgment. Because there are no genuine issues as to the material facts, and because defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment will be granted, and this action will be dismissed.

### Factual Background

The facts, taken in a light most favorable to plaintiffs, are as follows: During a trip to Hilton Head Island, Dr. Kleto and his wife decided that they would buy a condominium apartment in Hilton Head and entered into a sales contract for the purchase price of $620,000.00 on March 25, 2003. The contract required the Kletos to provide proof

of their ability to obtain financing for this purchase by April 7, 2003[1], and provided for a closing date of April 22, 2003. The Kletos were advised that the sale price was lowered due to the fact that the purchaser needed the transaction to conclude in a short time frame.

Dr. Kleto went to a Hilton Head Bank to discuss obtaining a loan through that bank to meet the requirements of the contract. While discussing the preliminary information about the loan, the banker ran a computer credit check on Dr. Kleto and discovered some problems in regard to late payments listed on an AmSouth loan. A call was placed to Harvey White, Senior Vice President and Senior Loan Officer at AmSouth about these problems. While Dr. Kleto was talking to Mr. White, he explained what he wanted - that he was purchasing a condominium in Hilton Head for $620,000.00. Mr. White asked Dr. Kleto to come back to Knoxville and do the loan through AmSouth and assured Dr. Kleto, that he, Harvey White, would make sure the loan would be approved for Dr. Kleto. Based upon that assurance, Dr. Kleto terminated his conversation with the Hilton Head banker and returned to Knoxville to meet with Don Hutchison at AmSouth to complete the loan.

Upon returning to Knoxville, Dr. Kleto met with Mr. Hutchison and his assistant, Diane Capps, to provide documentation in regard to the loan and was assured by White, Hutchison and Capps that the letter committing the bank to the loan would be

---

[1] This deadline was subsequently extended to April 15, 2003.

provided shortly. AmSouth was aware that Dr. Kleto's deadline for providing the commitment letter to the seller in Hilton Head was 4:15 p.m. on April 15, 2003.

On April 11, 2003, Capps faxed Dr. Kleto's "loan package" to the AmSouth Bank in Birmingham, Alabama for their review. Dr. Kleto asserts that he was never told that Birmingham, or someone other than Harvey White, had to approve his loan request. On April 14, 2003, Capps leaned that Birmingham had rejected Dr. Kleto's loan request and instead only approved a loan of $300,000.00. Capps informed her boss, Don Hutchison, and requested that he contact Harvey White to get him to get the loan approved. On April 15, when Capps had not received any response, she left a voice message for White to call her about the loan. Later that day, White instructed Capps to notify Dr. Kleto that his loan was rejected. Dr. Kleto advised his real estate agent that he could not get the financing by the deadline and cancelled the sale.

Shortly after the sale fell through, Dr. Kleto's friend purchased this same condominium, renovated it for $35,000 and sold it soon thereafter for a profit of $127,000.00. The Kletos have sued AmSouth asserting that (1) AmSouth entered into an oral contract to provide them with the funds to purchase the condominium and breached that contract by failing to do so; (2) that AmSouth is guilty of fraud since it assured the Kletos it would loan the money requested and waited until the last minute to advise them that it would not do so; (3) negligent representation; and (4) violation of the Tennessee Consumer Protection Act.

AmSouth has moved for summary judgment on the grounds that (1) the alleged oral agreement is too vague to be enforceable and that there was no mutual assent between the parties; (2) there is no written memorandum or note, signed by AmSouth, as required by the Statute of Frauds; (3) plaintiffs cannot establish the elements for fraud or negligent misrepresentation; (4) the Tennessee Consumer Protection Act does not apply to credit transactions; and (5) the facts fail to demonstrate that AmSouth engaged in any deceptive acts or practices. Plaintiffs oppose the motion, stating that there are many material facts in dispute in this case, therefore, defendant's motion should be denied.

**Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Analysis

The basis for plaintiffs' claims against AmSouth arises from an alleged oral agreement by AmSouth to extend plaintiffs credit in the amount of $620,000.00 to finance their purchase of a condominium in Hilton Head. It is undisputed that this alleged oral agreement was never reduced to a writing signed by a representative of AmSouth. AmSouth has moved for summary judgment on plaintiffs' claim for breach of contract, asserting that the because the alleged oral agreement to extend credit failed to contain crucial terms, it is too indefinite to be an enforceable contract under Tennessee law.

### A. Breach of Contract

It is well established in Tennessee law that a contract can be express, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. *Jamestowne on Signal, Inc. v. First Federal Savings & Loan Assoc.,* 807 S.W.3d 559, (Tenn.App. 1990). The alleged oral agreement between the parties lacks the essential ingredients to form an enforceable contract. Tennessee courts have held that for an agreement to loan money to be enforceable, it must contain such essential elements as the amount of money to be loaned, the duration of the loan, the rate of interest, the method of payment, and collateral securing the loan. *Id.* at 565.

-5-

Accepting the facts as alleged by plaintiffs as true, they are insufficient as a matter of law to show an agreement which would create an enforceable contract. Although the Kletos have shown that the amount of the loan was to be $620,000.00, which would be secured by their residence in Knoxville, they have not shown other essential elements such as the duration of the loan, the rate of interest, how the loan was to be paid, and when. Indefiniteness as to any essential element of the agreement may prevent the creation of an enforceable contract. *Id.* Here, the Kletos have presented no proof that AmSouth went beyond mere preliminary discussions and actually offered such funding until such time as AmSouth offered to loan the Kletos $300,000.00 to finance their purchase of the condominium, which was rejected by Dr. Kleto. I find that the alleged oral agreement between the Kletos and AmSouth failed to contain the necessary elements to make it an enforceable contract, and AmSouth cannot be said to have breached it.

Even if the court were to determine that the alleged oral agreement were otherwise enforceable, defendants argue that Tennessee's Statute of Frauds prohibits actions against lenders or creditors based upon promises or commitments to lend money or extend credit, including modifications of existing agreements, "unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, [is] in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor." Tenn. Code Ann. § 29-2-101(b)(1). Plaintiffs' breach of contract claim falls squarely within the terms of the statute, and, therefore, is unenforceable as a matter of law. Dr. Kleto claims that Harvey White made oral

commitments that AmSouth "would do the loan" and that "we'll do whatever it takes to get it done." Whether these statements are construed as a request for a new and distinct loan or an extension of an existing line of credit, the claim is barred. The statute applies to "any promise or commitment to lend money or to extend credit" and to any promise or commitment "to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit. . . ." In either instance, a writing, signed by the lender or its authorized representative, is mandatory for the agreement to be enforceable. The Kletos have provided no such written document. Instead, the Kletos contend that the doctrine of equitable estoppel takes the contract out of the Statute of Frauds because they detrimentally relied on Harvey White's promise.

The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive of the real facts. *Osborne v. Mountain Life. Ins. Co.,* 130 S.W.3d 769, 774 (Tenn. 2004). Equitable estoppel also requires the following elements with respect to the party asserting estoppel: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Id.* There

are limits to the application of equitable estoppel. The Tennessee Supreme Court has taken a restrictive view of the doctrine, limiting the application of equitable estoppel to "exceptional cases where to enforce the Statute of Frauds would make it an instrument of hardship and oppression, verging on actual fraud. *Baliles v. Cities Service,* 578 S.W.2d 621 (Tenn. 1979).

Dr. Kleto asserts that he relied upon AmSouth's repeated assurances that the letter of commitment would be provided him up until the moment when he could take no other action to obtain the loan. Dr. Kleto further asserts that he was never advised that Harvey White and Don Hutchison did not have the authority to approve his loan and he was never advised that Birmingham had to approve it. Therefore, the Kletos acted to their detriment by not borrowing the money from another lender.

Even if the Kletos' assertions are true – that Harvey White made the verbal commitment to loan plaintiffs $620,000.000; if Capps and Hutchison gave Dr. Kleto repeated assurances that the loan would come through; and if AmSouth made the final decision to loan plaintiffs only a portion of the funds at the end of the contractual deadline – no reasonable finder of fact could determine that AmSouth engaged in conduct "verging on actual fraud." While the plaintiffs may have foregone pursuing financing through another lender in the expectation that AmSouth would grant the loan request, there is no indication in the record that AmSouth's actions were based on improper motive, or that AmSouth obtained an unconscionable advantage by its actions. *See Shedd v. Gaylord*

*Entertainment Co.,* 118 S.W.3d 695 (Tenn.App. 2003). Plaintiffs have adduced no facts which would demonstrate the type of egregious conduct by AmSouth that would bring their case under the narrow exception to the statute for equitable estoppel. Because no such facts are present, I find that the Statute of Frauds is applicable to the plaintiffs' breach of contract claim. Accordingly, AmSouth will be granted judgment as a matter of law on plaintiffs' claim for breach of contract.

### B. Fraud

Plaintiffs have also raised a tort claim for intentional misrepresentation. The Kletos allege that Harvey White assured them he was going to make the loan and that he had the authority to make the loan – no one ever indicated that some unknown third party had to approve the loan. The Kletos relied on this false representation to their detriment and they suffered damages when they were unable to purchase the condominium.

The elements of intentional misrepresentation or fraud are: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the misrepresentation; and (4) the misrepresentation involves a past or existing fact. *Oak Ridge Precision Industries, Inc. v. First Tenn. Bank Nat'l Assoc.,* 835 S.W.2d 25, 29 (Tenn.App. 1992).

Plaintiffs' action for fraud fails as a matter of law. Accepting plaintiffs' allegation as true, they embody a promise of future action to loan money. By definition,

they do not misrepresent a past or present fact. Moreover, any reliance or assumption by plaintiffs that Harvey White had approved the loan was not justified. It simply was not reasonable for Dr. Kleto to rely solely upon Harvey White's assurances without an agreement executed by both parties evidencing the indebtedness. Dr. Kleto is a doctor who has been in practice in Knoxville for over twenty years. He has a medical degree. He has executed loan documents in the past, therefore, he is not an unsophisticated individual. Dr. Kleto was advised that AmSouth was going to have a new appraisal performed on his residence, that he was required to submit two years of his income tax returns and a financial statement in connection with the loan. Given these facts, no jury could find Dr. Kleto's reliance to be reasonable as a matter of law, and summary judgment will be granted to defendant on the Kletos' claim for fraud.

As to plaintiffs' claim for negligent misrepresentation, because the alleged promises relate to future action, and because it was unreasonable for plaintiff to rely upon Harvey White's alleged promise that their loan would be approved by AmSouth, defendant is entitled to summary judgment as a matter of law on this claim as well.

C. Tennessee Consumer Protection Act

Last, plaintiffs allege that defendant's actions in this case violated the Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. § 47-18-101 *et seq.* Specifically, plaintiffs allege that the individual bank employees, White, Hutchison and Capps deceptively misrepresented that Harvey White had the authority to, and was going

-10-

Case 3:04-cv-00243   Document 29   Filed 10/12/05   Page 10 of 12   PageID #: 34

to approve the loan. Defendant argues that the TCPA does not apply to credit transactions, and further argues that AmSouth engaged in no deceptive acts or practices, which caused injury to plaintiffs.

The TCPA specifically identifies over twenty particular acts and practices which are declared to be unfair or deceptive and also provides a catch-all provision that prohibits "any other act or practice which is deceptive to the consumer or to any other person. . . ." Tenn. Code Ann. § 47-18-104(b)(27). However, the Act provides an exemption for claims relating to "credit terms of a transaction," subject to one exception. Subsection (3) of T.C.A. § 47-18-111(a) provides:

> The provisions of this part do not apply to:
>
> . . .
>
> (3) Credit terms of a transaction which may be otherwise subject to the provisions of this part, except insofar as the Tennessee Equal Consumer Credit Act of 1974 . . . may be applicable. . . .

Thus, where a party would otherwise have a claim under the TCPA based upon a deceptive act or practice of a bank in connection with a credit transaction, such claims fall outside the scope of the Act, subject to the stated exception. Further, the exception for violation of the Equal Consumer Credit Act is not applicable here, because plaintiffs have not claimed discrimination under that Act. *See* Tenn. Code Ann. § 47-18-801 (generally prohibiting discrimination by creditor or credit card issuer between equally qualified individuals on basis of gender, disability, or martial status). Plaintiffs have cited to no authority, and the

-11-

court has found none, to support their proposition that such a claim may be brought under the TCPA. Moreover, as stated above, the record contains no evidence of a deceptive act or practice by AmSouth in connection with the Kletos' loan application. Therefore, the court finds that AmSouth is entitled to judgment as a matter of law on plaintiffs' claim for violation of the TCPA.

## **Conclusion**

For the reasons stated above, the court finds that defendant is entitled to judgment as a matter of law on plaintiff's claims for breach of contract, fraud, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act. Accordingly, defendant's motion for summary judgment [Doc. 18] will be granted, and this action will be dismissed.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge